## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### Athens Division

ARMANDO MAZON,                          Case No.:

     Plaintiff,

vs.

MAZDA FINANCIAL SERVICES, INC.,
EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS
UNION, LLC and EQUIFAX
INFORMATION SERVICES, INC.

     Defendants.

_____ /

## COMPLAINT
## JURY DEMAND

1.    Plaintiff, ARMANDO MAZON ("Plaintiff") by and through the undersigned counsel hereby brings this action against Defendants MAZDA FINANCIAL SERVICES, INC., EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and EQUIFAX INFORMATION SERVICES, INC., for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA") and as grounds thereof would allege as follows:

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.    Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Clarke County, Georgia.

## PARTIES

4.     Plaintiff is a natural person who, at all times relevant to this action was a resident of Clarke County, Georgia.

5.     Defendant, MAZDA FINANCIAL SERVICES, INC., ("Mazda Financial") is registered under a fictitious name, which is owned by a Texas corporation, Toyota Motor Credit Corporation.

6.     Mazda Financial conducts business within the state of Florida with sufficient minimum contacts such that personal jurisdiction is established.

7.     MAZDA FINANCIAL's registered agent for service of process in the state of Florida is CT Corporation System located at 1200 South Pine Island Road, Plantation, FL 33324.

8.     MAZDA FINANCIAL uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies. Trans Union, Equifax, and Experian shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs."

9.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which has effects on consumers and their credit reports within the state of Florida.

10.     Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11.     Defendant, Transunion LLC ("Trans Union") is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.     Defendant, Equifax Information Services, LLC is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13.     Mazda Financial, Experian, Equifax, and Trans Union shall be collectively referred to as the "Defendants."

14.     Experian, Equifax, and Trans Union shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs."

## FACTUAL ALLEGATIONS

15.     Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> > i.     credit or insurance to be used primarily for personal, family, or household purposes;
> >
> > ii.     employment purposes; or

iii.    any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

16.    The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

17.    If a consumer believes their credit report is inaccurate or incomplete, one can dispute such reporting with the CRA that prepared it. The CRA is then obligated to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate," 15 U.S.C. § 1681i(a)(1)(A), considering "[a]ll relevant information submitted by the consumer." *Id.* § 1681i(a)(4).

*The CDIA Metro 2 Credit Reporting Standards*

18.    The reporting of consumer credit information, by CRAs and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers by giving them access to loans and bank products that they need. *See* https://www.cdiaonline.org/for-consumers/credit-reporting-overview/ (last visited May 6, 2025).

19.    The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

20.    Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

21.     On May 20, 2015, Ohio Attorney General Mike DeWine and thirty (30) other state attorneys general announced a national settlement ("The Settlement") with the CRAs. *Attorney General DeWine Announces Major National Settlement with Credit Reporting Agencies*,      Ohio      Att'y      Gen.      (May      20,      2015), https://www.ohioattorneygeneral.gov/Media/News-Releases/May-2015/Attorney-General-DeWine-Announces-Major-National-S , last visited May 6, 2025.

22.     The Settlement implemented numerous reporting standards, including the Metro 2, data reporting format. *See* Assurance of Voluntary Compliance/Assurance of Voluntary Discontinuance, *In the Matter of Equifax Info. Servs. L.L.C., Experian Info. Sols., Inc., and TransUnion L.L.C.,* § IV (E)(2) (May 20, 2015).

23.     In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. See, https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/    (last accessed May 6, 2025).

24.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and    timely    data,    and    has    developed    the    Metro    2    standards.    *See* https://www.cdiaonline.org/metro-2/ *(*last visited May 6, 2025).

25.     In order to ensure compliance with the FCRA, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard (the "Metro2 standard")

for reporting consumer accounts that is "designed to standardize a wide range of credit information while complying with federal laws and regulations for credit reporting." *Id.*

26.    15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies, to make sure the information is complete and accurate. Similarly, upon receiving notice from a consumer reporting agency of a consumer's dispute, 15 U.S.C. § 1681s-2(b)(1) requires furnishers of information to conduct reasonable investigations of a consumer's dispute of the completeness or accuracy of any information provided by the furnisher of information to a consumer reporting agency.

27.    15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Similarly, 15 U.S.C. § 1681i(a)(1) requires consumer reporting agencies to conduct reasonable reinvestigations of a consumer's dispute of the completeness or accuracy of any item of information contained in the consumer's file.

28.    The uniform adoption and implementation of the Metro 2 standards is the primary vehicle by which CRAs and furnishers ensure compliance with their respective duties to maintain complete and accurate information under the FCRA.

29.    The Metro 2 standards are documented in the Credit Reporting Resource Guide ("CRRG"), an industry-standard publication produced and distributed by the CDIA.

30.    As an integral part of its duties under the FCRA, Mazda Financial is required to have in place adequate and reasonable policies and procedures for handling and investigation of disputed information.

31.    At all times relevant hereto, Mazda Financial is required to have in place adequate and reasonable policies and procedures for handling and investigation of disputed information.

32.    At all times relevant hereto, Mazda Financial adopted and implemented the Metro2 format as a means of fulfilling its duties under the FCRA.

33.    Furthermore, at all times relevant hereto, Mazda Financial represented to all CRAs to which it reported that it had adopted and implemented the Metro 2 format for its reporting of consumer data, and would otherwise comply with Metro 2 and CDIA guidelines in its reporting of consumer information.

34.    At all times relevant hereto, the CRAs adopted and implemented the Metro 2 format as a means of fulfilling their respective duties under the FCRA.

*The Statutorily Required Automated Reinvestigation System*

35.    The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

36.    To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser- based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

37.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed May 6, 2025).

38.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id*.

39.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e- OSCAR.

40.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed May 6, 2025).

41.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id*.

42.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e- OSCAR.

43.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

44.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with

whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. *See* https://www.e-oscar.org/implementation/about-us (last accessed May 6, 2025).

45.    Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

*The Consumer Information Indicator*

46.    The Consumer Information Indicator ("CII"), is a single-character code which indicates an account's status in relation to a consumer's bankruptcy.

47.    Furnishers and CRAs are required to update the CII code when an Underlying Bankruptcy for bankruptcy is filed, and again when the bankruptcy is discharged, dismissed, or withdrawn.

48.    The reporting of a proper CII code for a consumer's account ensures that the tradeline for that account accurately discloses that account's relationship to the bankruptcy case and can suppress other statements about the account (i.e., "in collections", "charged off") which are inconsistent with its status with respect to the bankruptcy.

49.    While furnishers sometimes report derogatory information about an account during and after a bankruptcy, the reporting of an accurate CII code ensures that if such derogatory information is reported, it is either withheld from viewers of the report, or placed in its proper context relative to the consumer's bankruptcy.

50.    This is especially important, as not all accounts are included in and/or dischargeable by consumer bankruptcy.

51.    The failure to report an accurate CII code for an account which was discharged in bankruptcy, or is included in an active bankruptcy, can lead to a consumer's report containing derogatory information which would otherwise not be visible to viewers of the

report, and render other portions of the report misleading, since a viewer would not be aware that the account is included in bankruptcy.

52.    These false impressions become even greater in the light of the universally adopted Metro 2 standards, which require that an account within, or discharged by, a consumer bankruptcy be identified as such.

53.    Since the industry standard requires disclosure of a pending bankruptcy, the absence of such a disclosure inherently misleads a viewer into believing that the account is not included in bankruptcy.

54.    Relatedly, where an account which *is not* discharged or dischargeable in bankruptcy is reported with an incorrect CII indicator, the consumer's report can falsely indicate that the account is subject to bankruptcy or discharge and suppress the consumer's positive history of making payments toward the account.

*Reporting of Accounts in a Confirmed Chapter 13 Bankruptcy Plan Under Metro 2*

55.    Upon confirmation of a Chapter 7 plan, Metro 2 requires furnishers and CRAs to report on an included account **for any debtor included in the bankruptcy** as follows:

a.  A **Consumer Information Indicator** ("CII") of "D" (or blank to maintain a "D" which was previously reported), indicating that the account is subject to an Underlying Bankruptcy for Chapter 13 bankruptcy;

b.  An **Account Status Code** reflecting the status at time of the Underlying Bankruptcy;

c.  A **Payment History** of "D" (indicating "no history available") for each month since the filing of the bankruptcy, plus actual history for prior months;

d.  An **Amount Past Due** of zero;

    e.    A **Current Balance** reflecting the current balance as provided for under the terms of the Chapter 13 plan, rather than the original contract;

    f.    **Terms Duration & Terms Frequency** which incorporate any changes the contract terms provided for under the Chapter 13 plan;

    g.    The **Scheduled Monthly Payment Amount** reflecting the scheduled payment amount under the Chapter 13 plan, rather than under the original contract; and

    h.    A **Date of Account Information** of the current month's date (increasing with each month's reporting).

    2022 CRRG, FAQ 27(d) at 6-25 – 06-26 (emphasis added).

56.    If an account includes one consumer who did file bankruptcy, but the other has not, then the CII field is supposed to be left blank for the non-filer. Id.

57.    Plaintiff and his son, Romell Mazon were co-signers on a retail installment sales contract for a vehicle that was financed by Mazda Financial.

*Plaintiff's Son Files Bankruptcy, But Plaintiff Does Not*

58.    On April 29, 2023 Plaintiff's son, Romell Mazon filed a Chapter 7 Petition for Bankruptcy in the United States District Court for the Southern District of Florida, Case No. 23-13425-CLC (the "Petition").

59.    The Petition included a secured debt Plaintiff and his son had with MAZDA FINANCIAL on the Schedule A/B portion, which is the subject of this lawsuit.

60.    However, Plaintiff himself was never part of the Petition, therefore for purposes of Metro2 reporting requirements he was to be treated as a non-filer.

61.    On August 9, 2023, Romell Mazon received an order of discharge in connection with the Petition under 11 U.S.C. §727 ("Discharge").

62.    After the Discharge, the vehicle financed by Mazda Financial was flooded and declared a total loss by Progressive Insurance Company; this left a balance of about $930 to pay off.

63.    Plaintiff and his son, Romell Mazon, made multiple attempts to pay the balance after Progressive's payment, but they were instead redirected to Mazda's bankruptcy department who then told Plaintiff and his son that no payment could be accepted due to the previous bankruptcy.

64.    After the Discharge, Plaintiff reviewed his available credit reports from the CRAs and noticed the account with MAZDA FINANCIAL failed to report the payment history for the months in between the Petition and Discharge, and was also reporting a $930 charge-off beginning in approximately November of 2023.

*Plaintiff's Disputes to the CRAs and Mazda Financial*

65.    On February 7, 2024 Plaintiff tried to correct the information on the MAZDA FINANCIAL account by sending a written dispute letter stating that the co-borrower, Romell Mazon filed bankruptcy, but he did not, and the circumstances created by Mazda Financial has led to the late payments and charge-off information which is inaccurate ("Initial Dispute").

66.    On February 20, 2024, Plaintiff received results from MAZDA FINANCIAL for his Initial Dispute who stated the information was reporting correctly and consistent with its records.

67.    After receiving Mazda Financials' results for the Initial Dispute, Plaintiff sent a second dispute to the CRAs, which was forwarded to MAZDA FINANCIAL on or about June 27, 2024 ("Second Dispute".)

68.     The Second Dispute reiterated Plaintiff's Initial Dispute while also adding additional details to show why the information being reported was inaccurate including: his son's full name; the hidden payment history being during the bankruptcy; and the failure of Mazda Financial to accept payments following the vehicle being declared a total loss.

69.     On July 18, 2024 Mazda Financial responded to the Second Dispute who stated the information was reporting correctly and consistent with its records.

70.     Following the results of the Second Dispute, Plaintiff sent a follow-up letter on August 20, 2024 because he had either not received reinvestigation results from the CRAs, or one or more of the CRAs requested additional information to identify Plaintiff's account despite the fact he had already sent sufficient identification documents in the Initial Dispute.

71.     On November 20, 2024, Plaintiff sent another dispute where he reiterated the previous information, but this time included copies of the portions of his credit reports that showed the account in question so there could be no confusion or mistake as to what account was at issue ("Final Dispute.")

72.     Despite Plaintiff's four total disputes to the CRAs ("Collective Disputes") the MAZDA FINANCIAL account fails to show any payment history between the months of the Petition and Discharge and the $930 charge-off is reporting as well.

73.     MAZDA FINANCIAL and the CRAs have been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties ("Inaccurate Information") after being put on notice of such inaccuracies in written disputes.

74.   Upon receiving the Initial Dispute, Experian relayed that correspondence to MAZDA FINANCIAL, who failed to conduct a reasonable investigation, and then furnished the MAZDA FINANCIAL Inaccurate Information to Experian.

75.   Upon receiving the Second Dispute, Experian repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Experian.

76.   Upon receiving the Follow-up Dispute, Experian repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Experian.

77.   Upon receiving the Final Dispute, Experian repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Experian.

78.   Upon receiving the Initial Dispute, Trans Union relayed that correspondence to MAZDA FINANCIAL, who failed to conduct a reasonable investigation, and then furnished inaccurate information to Trans Union.

79.   Upon receiving the Second Dispute, Trans Union repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Trans Union.

80.   Upon receiving the Follow-up Dispute, Trans Union repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Trans Union.

81.     Upon receiving the Final Dispute, Trans Union repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Trans Union.

82.     Upon receiving the Initial Dispute, Equifax relayed that correspondence to MAZDA FINANCIAL, who failed to conduct a reasonable investigation, and then furnished inaccurate information to Equifax.

83.     Upon receiving the Second Dispute, Equifax repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Equifax. Equifax responded by asking Plaintiff send in identifying documents when he had already sent that information.

84.     Upon receiving the Follow-up Dispute, Equifax repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Equifax.

85.     Upon receiving the Final Dispute, Equifax repeated the process of relaying that correspondence to MAZDA FINANCIAL who failed to conduct a reasonable investigation, and then furnished inaccurate information to Equifax.

86.     Despite Plaintiff's Collective Disputes, MAZDA FINANCIAL and the CRAs continue to report the Inaccurate Information, did not include the hidden payment history during the bankruptcy even though Plaintiff was included in the Petition, and included the misleading and inaccurate charge-off information.

87.     Since the collective disputes have been sent to all Defendants, the Inaccurate Information regarding the MAZDA FINANCIAL account has been published to third parties when Plaintiff has applied for credit or had his existing accounts reviewed.

88.     These applications and/or account reviews have resulted in one or more adverse actions.

89.     Plaintiff now brings this action so his credit reports can accurately reflect his creditworthiness in future applications regarding the MAZDA FINANCIAL and to address harms that have already occurred despite his attempts to correct inaccuracies.

### COUNT I – VIOLATION OF 15 U.S.C. §1681s-2(b) AGAINST MAZDA FINANCIAL FOR INITIAL DISPUTE

90.     Plaintiff incorporates by reference his allegations in Paragraphs 1 – 9 and 13 - 89.

91.     MAZDA FINANCIAL is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

92.     MAZDA FINANCIAL violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Initial Dispute when it failed to review all relevant information. forwarded by the CRAs concerning the account MAZDA FINANCIAL reported.

93.     As a result of MAZDA FINANCIAL's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

94.     MAZDA FINANCIAL negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

95. Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against MAZDA FINANCIAL in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II – VIOLATION OF 15 U.S.C. §1681s-2(b) AGAINST MAZDA FINANCIAL FOR SECOND DISPUTE

96. Plaintiff incorporates by reference the allegations in paragraphs 1 – 9, and 13 - 89.

97. MAZDA FINANCIAL is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

98. MAZDA FINANCIAL violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Second Dispute when it failed to review all relevant information. forwarded by the CRAs concerning the account MAZDA FINANCIAL reported.

99. As a result of MAZDA FINANCIAL's violations of the FCRA, Plaintiff suffered damage to reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

100.    MAZDA FINANCIAL negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

101.    Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against MAZDA FINANCIAL in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## (AGAINST MAZDA FINANCIAL FOR FOLLOW-UP DISPUTE)

102.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 9 and 13 – 89.

103.    MAZDA FINANCIAL is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

104.    MAZDA FINANCIAL violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Follow-up Dispute when it failed to review all relevant information. forwarded by the CRAs concerning the account MAZDA FINANCIAL reported.

105.    As a result of MAZDA FINANCIAL's violations of the FCRA, Plaintiff suffered damage to reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

106.      MAZDA FINANCIAL negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

107.      Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against MAZDA FINANCIAL in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV – VIOLATIONS OF 15 U.S.C. §s-2(b)
## AGAINST MAZDA FINANCIAL FOR FINAL DISPUTE

108.      Plaintiff incorporates by reference the allegations in paragraphs 1 – 9 and 13 – 89.

109.      MAZDA FINANCIAL is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

110.      MAZDA FINANCIAL violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Final Dispute when it failed to review all relevant information. forwarded by the CRAs concerning the account MAZDA FINANCIAL reported.

111.      As a result of MAZDA FINANCIAL's violations of the FCRA, Plaintiff adverse actions related to credit applications, damage to reputation for credit worthiness, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

112.      MAZDA FINANCIAL negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

113.     Plaintiff is entitled to an award of prevail party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against MAZDA FINANCIAL in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT V - VIOLATIONS OF 15 U.S.C. 1681i**
**(AGAINST EXPERIAN FOR COLLECTIVE DISPUTES FORWARDED TO MAZDA FINANCIAL)**

114.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 10, 13 – 77, and 86 – 89.

115.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

116.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

117.     During the relevant time frame, Experian received Plaintiff's Initial Dispute regarding the completeness or accuracy of the account reported by MAZDA FINANCIAL on Plaintiff's credit report.

118.     Additionally, Experian received Plaintiff's Second Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL on Plaintiff's credit report.

119.     Experian also received Plaintiff's Follow-up Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL on Plaintiff's' credit report.

120.     Lastly, Experian received Plaintiff's Final Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL on Plaintiff's' credit report.

121.    Experian violated 15 U.S.C. § 1681i by failing to by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies through Plaintiff's Collective Disputes.

122.    Experian unreasonably relied on information provided by MAZDA FINANCIAL, when readily verifiable information that Plaintiff provided in the Collective Disputes placed Experian on notice that Mazda Financial's information was inaccurate.

123.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

124.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

125.    As a result of Experian's violation of the FCRA, Plaintiff suffered adverse actions regarding applications for credit, mental and emotional distress of being denied credit, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VI – VIOLATIONS OF 15 U.S.C §1681e(b)
## AGAINST EXPERIAN

126.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 10, 13 – 77, and 86 – 89.

127.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as defined by the FCRA.

128.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

129.    Following any of Plaintiff's Collective Disputes, Experian was on notice of inaccuracies within Plaintiff's' credit file concerning the MAZDA FINANCIAL account.

130.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

131.    Any users of credit reports that viewed credit information containing the MAZDA FINANCIAL, account were sent Inaccurate Information concerning Plaintiff.

132.    As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in his credit file, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

**COUNT VII – VIOLATIONS OF 15 U.S.C. §1681i**
**(AGAINST TRANS UNION FOR COLLECTIVE DISPUTES**
**FORWARDED TO MAZDA FINANCIAL)**

133.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 11, 13 – 73, 78 – 81, and 86 - 89 .

134.    At all times relevant hereto, Trans Union was and is a "consumer reporting agency" as defined by the FCRA.

135.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

136.    During the relevant time frame, Trans Union received Plaintiff's Initial Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

137.    Additionally, Trans Union received Plaintiff's Second Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

138.    Trans Union also received Plaintiff's Follow-up Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

139.    Lastly, Trans Union received Plaintiff's Final Dispute regarding the accuracy of the account reported by MAZDA Financial.

140.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

141.    Trans Union unreasonably relied on MAZDA FINANCIAL when readily verifiable information that Plaintiff provided in the Collective Disputes placed Trans Union on notice that Mazda Financial's information was inaccurate.

142.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

143.    Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

144.    Because of Trans Union's FCRA violations, Plaintiff suffered adverse actions regarding applications for credit, mental and emotional distress of being denied credit, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Trans Union for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VIII – VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

145.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 11, 13 – 73, 78 – 81, and 86 - 89.

146.    During the relevant time frame, Trans Union was and is a "consumer reporting agency as defined by the FCRA.

147.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

148.    Following any of Plaintiff's Collective Disputes, Trans Union was on notice of inaccuracies within Plaintiff's' credit file concerning the MAZDA FINANCIAL account.

149.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

150.    Any users of credit reports that viewed credit information containing the MAZDA FINANCIAL account were sent Inaccurate Information concerning Plaintiff.

151.    Because of Trans Union's FCRA violations, Plaintiff suffered adverse actions regarding applications for credit, mental and emotional distress of being denied credit, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Trans Union for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

**COUNT IX – VIOLATIONS OF 15 U.S.C. §1681i**
**AGAINST EQUIFAX FOR COLLECTIVE DISPUTES TO MAZDA FINANCIAL**

152.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 12 – 73, 78 – 81, and 86 – 89.

153.    During the relevant time frame, Equifax was and is a "consumer reporting agency" as defined by the FCRA.

154.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

155.    Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

156.    Additionally, Equifax received Plaintiff's Second Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

157.    Equifax also received Plaintiff's Follow-up Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

158.    Lastly, Equifax received the Final Dispute regarding the accuracy of the account reported by MAZDA FINANCIAL.

159.    Equifax unreasonably relied on Mazda Financial when readily verifiable information that Plaintiff provided in the Collective Disputes placed Equifax on notice that Mazda Financial's information was inaccurate.

160.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies through Plaintiff's Collective Disputes.

161.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

162.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

163.    Because of Equifax's FCRA violations Plaintiff suffered adverse actions regarding applications for credit, mental and emotional distress of being denied credit, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT X – VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

164.    Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 12 – 73, and 82 – 89.

165.    During the relevant time frame, Equifax was and is a "consumer reporting agency" as defined by the FCRA.

166.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

167.    Following any of Plaintiff's Collective Disputes, Equifax was on notice of inaccuracies within Plaintiff's' credit file concerning the MAZDA FINANCIAL account.

168.    Equifax violated 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

169.    Any users of credit reports that viewed credit information containing the MAZDA FINANCIAL, account were sent Inaccurate Information concerning Plaintiff without the consumer statement being added.

170.    Because of Equifax's FCRA violations Plaintiff suffered adverse actions regarding applications for credit, mental and emotional distress of being denied credit, damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for

Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

171.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_/s/ Mark A. Carey, Esq._
GA Bar No. 109360
500 Roswell Road; Building C
Sandy Springs, GA 30342
716-853-9243
markcareylaw@ymail.com

*Attorney for Plaintiff*